# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN RAYMOND PEREZ,<br>    Petitioner, | )<br>)<br>) |
| V. | )<br>)<br>) |
| ALBERTO GONZALES, Attorney General;<br>MICHAEL CHERTOFF, Secretary,<br>DEPARTMENT OF HOMELAND SECURITY;<br>and MICHAEL J. GARCIA, Acting Secretary,<br>BRUCE CHADBOURNE,<br>Interim Field Office Director,<br>Boston District, BUREAU OF IMMIGRATION<br>AND CUSTOMS ENFORCEMENT;<br><br>    Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**05   10895 DPW**

NO._____

**PETITION FOR WRIT OF
HABEAS CORPUS,
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF, and
MOTION FOR EMERGENCY
STAY OF DEPORTATION**

Petitioner, Juan Raymond Perez ("Perez"), hereby petitions this Court for a writ of habeas corpus to review the lawfulness of his final order of deportation. He respectfully alleges, by his undersigned attorney, as follows:

## JURISDICTION

1.  This action arises under the Constitution, the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 et seq., and the Administrative Procedures Act ("APA"), 5 U.S.C. §701 et seq.. This Court has habeas corpus subject matter jurisdiction pursuant to 28 U.S.C. §

2241 et seq., see INS v. St. Cyr, 533 U.S. 289 (2001); Art. 1, §9, Cl. 2 of the U.S. Constitution ("Suspension Clause"); and the Common Law. This Court may also exercise jurisdiction pursuant to 28 U.S.C. §1361 (mandamus jurisdiction), and 28 U.S.C. §1331, and may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., and the All Writs Act, 28 U.S.C. §1651.

## VENUE

2.     Venue lies in the United States District Court for the District of Massachusetts, the judicial district where the (former) Immigration and Naturalization Service ("INS") previously issued his Order To Show Cause ("OSC"), thereby initiating his deportation proceedings.

## PARTIES

3.     Respondent Alberto Gonzales is sued in his official capacity as the Attorney General of the United States. In this capacity he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. §1103, is a legal custodian of Mr. Perez and is empowered to carry out the deportation order against Mr. Perez.

4.     Michael Chertoff is sued in his official capacity as Secretary of the Department of Homeland Security ("DHS"). Secretary Chertoff and DHS are responsible, through the Directorate of Border and Transportation Security ("DBTS"), for the enforcement of the immigration laws, are legal custodians of Mr. Perez , and are empowered to carry out the deportation order against Mr. Perez.

5.     Respondent Michael J. Garcia is sued in his official capacity as Acting Secretary of the Bureau of Immigration and Customs Enforcement ("BICE"). Respondent Bruce Chadbourne is sued in his official capacity as Interim Field Officer Director of the BICE. Mr.

Garcia, Mr. Chadbourne, and BICE are responsible for the enforcement of the immigration laws, are legal custodians of Mr. Perez, and are empowered to carry out the deportation order against Mr. Perez.

## FACTS

6.    The Respondent, Juan Raymond Perez, is a native and citizen of the Dominican Republic who entered the United States as a lawful permanent resident on September 12, 1983, at San Juan, Puerto Rico, at the age of nine. On March 29, 1996, Mr. Perez pled guilty in the Suffolk County Superior Court at Boston, Massachusetts to charges of possession with intent to distribute Class B narcotics. As a result of his plea, deportation proceedings commenced with the service of an Order to Show Cause dated May 29, 1996.

7.    At a deportation hearing on December 12, 1996, Mr. Perez was not permitted to apply for a §212 (c) waiver, based upon the decision of the Board of Immigration Appeals in Matter of Soriano, 21 I&N Dec. 516 (BIA 1996). Rather than file a timely notice of appeal of this decision, Mr. Perez' former attorney filed a motion to the Board which requested that the 30 day period in which to notice the appeal be extended. That motion was ultimately denied, and no appeal was ever taken to the BIA. On January 22, 1998, Mr. Perez was deported to the Dominican Republic.

8.    On June 25, 2001, the United States Supreme Court decided INS v. St. Cyr, 533 U.S. 289 (2001), which overruled Soriano and held that the relief-eliminating provisions of the Antiterrorism and Effective Death Penalty Act could not be applied retroactively to any alien, like Mr. Perez, whose criminal plea predated the enactment of the statute.

9.    In the meantime, Mr. Perez re-entered the United States in September, 1998. He assumed an alias, Jorge Marrero, and subsequently obtained a social security card and a

Massachusetts vehicle operator's license under that name. He worked steadily, including at the automotive business owned by his father, and began a relationship which produced his fourth child and in which he remains to this day.

10. On May 29, 2002, Mr. Perez was apprehended by the Immigration and Naturalization Service and subsequently indicted by a federal grand jury for illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. Under the authority of United States v. Mendoza-Lopez, 481 U.S. 828 (1987), Mr. Perez filed a motion to dismiss the indictment, claiming both that he had been deported unlawfully (pursuant to an erroneous interpretation of the law), and that he had been deprived of judicial review of the deportation order by the ineffective assistance of former counsel (who failed to perfect his appeal to the BIA).

11. After hearing on the motion, United States District Judge Douglas P. Woodlock issued a memorandum and order on January 22, 2003. The Court found that the denial of Mr. Perez' §212(c) application "appears to have been based on an error of law ultimately clarified by the Supreme Court's decision"; and, further, that Mr. Perez "was prevented from pursuing a meritorious direct immigration appeal by the lack of effective assistance from his immigration counsel." Rather than immediately dismiss the criminal indictment, the Court determined that it would "afford the defendant the opportunity to move for immediate reconsideration in the Immigration Court of the earlier denial of the §212(c) waiver application".

12. The Immigration Judge granted Mr. Perez' Motion to Reopen on April 2, 2003. On August 14, 2003, the Department filed a motion requesting the Immigration Judge to vacate her decision to reopen the case. The DHS motion claimed, *inter alia*, that the Immigration Judge (hereinafter "IJ") lacked jurisdiction to reopen Mr. Perez' proceedings pursuant to Immigration and Nationality Act ("INA") §241(a)(5) and 8 CFR §241.8(a), because his prior order of deportation had been reinstated. The Immigration Judge denied the Department's motion to

vacate and held a hearing on the application for §212(c) relief. By written decision of April 26, 2004, the Immigration Judge granted Mr. Perez a §212(c) waiver in the exercise of discretion.

13.    The DHS appealed to the Board of Immigration Appeals. In a decision dated February 25, 2005, the BIA reversed the decision of the Immigration Judge, holding that, pursuant to Matter of G-N-C-, 22 I&N Dec. 281 (BIA 1998), "the Board and the Immigration Judge have no jurisdiction to review challenges to an order of deportation which is reinstated under section 241(a)(5) of the Act." The Board thereupon vacated the Immigration Judge's decision reopening proceedings and granting Mr. Perez' §212(c) application

## JURISDICTIONAL BASES FOR HABEAS CORPUS REVIEW

14.    The statutory basis for this Court's habeas jurisdiction to review Mr. Perez' final order of deportation is 28 U.S.C. §2241, the general grant of habeas jurisdiction bestowed on the federal district courts. See INS v. St. Cyr, 533 U.S. 289 (2001). This Court may also exercise jurisdiction pursuant to 28 U.S.C. §1331, and mandamus jurisdiction pursuant to 28 U.S.C. §1361. Mr. Perez is also entitled to review of his final order of deportation as a matter of constitutional right (and under the Common Law). The Writ of Habeas Corpus is guaranteed by the Constitution and cannot be suspended except where "in Cases of Rebellion or Invasion the Public Safety may require it." U.S. Constitution, Art. I, § 9, Cl. 2 ( Suspension Clause).

## EXHAUSTION

15.    Mr. Perez has exhausted all available administrative remedies.

16.    No prior petition for writ of habeas corpus has been made by Mr. Perez.

17.    No court has previously addressed the merits of Mr. Perez' case.

18.    Mr. Perez will be irreparably harmed if he is deported while his petition and

complaint are pending before this Court, because he will have been denied all opportunity for judicial review and will be deported based on an administrative decision that is inconsistent with the INA and the U.S. Constitution.

### COUNT I

### (Statutory Violation)

19.    The BIA decision erroneously applied Immigration and Nationality Act (INA) §241(a)(5) to this case. Section 241(a)(5) presupposes a *lawful* deportation and an *illegal* re-entry. Because Mr. Perez' prior deportation was unlawful, his re-entry cannot be illegal; thus, §241(a)(5), by its own terms, does not apply. See U.S. v. Mendoza-Lopez, 481 U.S. 828 (1987) (affirming dismissal of criminal charge of illegal re-entry after deportation where collateral attack on validity of underlying deportation order successful); Leitao v. Ashcroft, 311 F.3d 453, 456 (1st Cir. 2002) (holding that bar to re-admission of previously deported alien "is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner," and remanding case to afford petitioner a hearing on his §212(c) application). Moreover, as the Immigration Judge noted, because the prior order of deportation was rescinded, those findings and decisions were void *ab initio.*

### COUNT II

### (Statutory Violation)

20.    The application of INA §241(a)(5) to Mr. Perez' case violates the principles of statutory retroactivity. See Landgraf v. U.S. Film Products, 511 U.S. 244, 114 S.Ct. 1483 (1994); INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001). In Arevalo v. Ashcroft, 344 F.3d 1 (1st Cir. 2003), the First Circuit held that §241(a)(5) cannot be applied retroactively to applications for discretionary relief which were pending at the time of the provision's enactment.

Since Mr. Perez' §212(c) application was pending prior to the enactment of INA §241(a)(5), that provision may not be applied retroactively to deprive him of his opportunity to apply for §212(c) relief.

**COUNT III**

**(Due Process)**

The opportunity to seek discretionary relief from deportation is "properly classified as a substantive right." Arevalo v. Aschcroft, 344 F.3d 1, 14 (1st Cir. 2003). The application of INA §241(a)(5) to this case violates due process.

**MOTION FOR STAY OF DEPORTATION**

Mr. Perez respectfully moves this Honorable Court for a stay of deportation pending the resolution of the issues presented in this Petition. If Mr. Perez is deported, he will forfeit his right to contest these important constitutional claims. Given the highly meritorious issues presented, the likelihood of success on the petition, and the irreparable harm which will befall Mr. Perez if he is deported, this Court should grant a stay of deportation pending further proceedings.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner respectfully prays this Court to:

a.    Assume jurisdiction over this matter;

b.    Declare Mr. Perez' order of deportation as contrary to law;

c.    Issue preliminary injunctive relief, granting the Motion to Stay
      Deportation, thus prohibiting Mr. Perez' deportation
      pending final resolution of this action;

d.    Issue a writ of habeas corpus and permanent injunction directed at

Respondents to vacate Mr. Perez' final order of

deportation as contrary to law and remand this matter to the Immigration

Court to allow the Immigration Judge to terminate the deportation proceedings;

e.    Award reasonable costs and attorney's fees; and

f.    Grant such further relief as the Court deems just and proper.

Respectfully Submitted,
Juan Raymond Perez,
By His Attorneys,

_____
Randy Olen, Esq.
55 Bradford Street, Suite 203
Providence, Rhode Island 02903
(401) 274-1400
(401)274-2480 (fax)

_____
Chris Tadros, Esq.
128 Dorrance Street, Suite 600 C
Providence, Rhode Island 02903
(401) 272-0011
(401) 274-0175(fax)

8

## **CERTIFICATION**

I hereby certify that on the 2nd day of May, 2005, I sent a true copy of the within ***Petition for Writ of Habeas Corpus*** to:

Alberto Gonzales, United States Attorney General, United States Department of Justice, Civil Division, Office of Immigration Litigation, P.O. Box 878, Ben Franklin Station, Washington, D.C., 20044;

Michael Chertoff, Secretary, United States Department of Homeland Security, Washington, D.C. 20528;

Department of Homeland Security, District Counsel, JFK Federal Building, Room 425, Government Center, Boston, MA 02203;

Michael J. Garcia, Assistant Secretary, United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Washington, D.C. 20528;

Bruce Chadbourne, Interim Field Office Director, BICE, JFK Federal Building, 17th Floor, Boston, MA 02203.



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Olen, Randy, Esq.
55 Bradford Street  Suite 203
Providence, RI  02903-0000

Office of the District Counsel/BO
P.O. Box 8728
Boston, MA  02114

Name: *S-PEREZ, JUAN RAYMOND                  A38-014-144

<u>Date of this notice</u>: 02/25/2005

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*J.J.Kd*

Frank Krider
Chief Clerk

Enclosure

Panel Members:
     COLE, PATRICIA A.
     FILPPU, LAURI S.
     HESS, FRED

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A38 014 144 - Boston

Date:

In re:  JUAN RAYMOND PEREZ

FEB 2 5 2005

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Randy Olen, Esquire

ON BEHALF OF DHS:        John M. Furlong, Jr.
                        Assistant Chief Counsel

CHARGE:

    Order:   Sec.    241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
                 Convicted of aggravated felony

            Sec.    241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
                 Convicted of controlled substance violation

    Lodged:    241(a)(1)(B), I&N Act [8 U.S.C. § 1251(a)(1)(B)] -
                 Entered without inspection

APPLICATION:  Reopening; waiver of inadmissibility

    The Department of Homeland Security's ("DHS," formerly the Immigration and Naturalization Service) appeal of the Immigration Judge's April 26, 2004, decision reopening the respondent's proceedings and granting his application for a waiver of inadmissibility under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), will be sustained and the Immigration Judge's decision and order vacated.

    The record reflects that the respondent was issued an Order to Show Cause by the DHS on May 29, 1996, as a result of his March 29, 1996, conviction in the Suffolk Superior Court in Boston, Massachusetts, for the offense of unlawful possession of a Class A substance with the intent to distribute in violation of Chapter 94C of the Massachusetts General Laws. On December 10, 1996, the Immigration Judge found the respondent deportable as charged and pretermitted his applications for suspension of deportation and a waiver of inadmissibility under former section 212(c) of the Act. The decision was never appealed, and the respondent was deported from the United States on January 22, 1998.

A38 014 144

On or about May 29, 2002, the DHS arrested the respondent at the Dorchester, Massachusetts District Court where he was facing motor vehicle charges and was using an alias. Upon further investigation, the DHS determined that the respondent had been previously deported as described above. On that same date, the DHS issued a "Notice of Intent/Decision to Reinstate Prior Order," and on May 30, 2002, the prior deportation order was reinstated. Subsequently, on January 22, 2003, the United States District Court for the District of Massachusetts issued an order refusing to dismiss the criminal charges against the respondent for illegal reentry, but allowing the respondent the opportunity to move the Immigration Court for consideration of his application for a waiver under former section 212(c) of the Act in accordance with the decision by the United States Supreme Court in *St. Cyr v. INS*, 533 U.S. 289 (2001).

On March 20, 2003, the respondent, through counsel, filed a motion to reopen with the Immigration Judge asking that she reopen the respondent's case *sua sponte* in order to hear his application for a 212(c) waiver. The Immigration Judge granted the respondent's motion on April 3, 2003. Subsequently, on August 14, 2003, the DHS filed a motion with the Immigration Judge requesting that she vacate her ruling reopening the respondent's proceedings because the "Warrant of Removal/Deportation" entered against the respondent on or about December 27, 2002, and executed on January 22, 1998, had been re-instated pursuant to 8 C.F.R. § 1241.8(a) (2004) when the respondent illegally reentered the United States. The Immigration Judge denied the DHS motion, reopened the respondent's proceedings, and granted his application for a waiver under former section 212(c) of the Act. The DHS appeals.

On appeal, the DHS first argues that the Immigration Judge erred in reopening the respondent's proceedings because she lacked the jurisdiction to do so. The DHS next argues that the Immigration Judge erred in granting the respondent's application for a waiver under former section 212(c) of the Act because she lacked jurisdiction to consider the application under section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5). In this regard, the DHS alternatively argues that the Immigration Judge erred in granting the 212(c) application in her discretion. In addition, the DHS contends that the Immigration Judge erred in failing to sustain the additional charge lodged against the respondent under section 241(a)(1)(B) of the Act for entering the United States without inspection and, therefore, erred in granting the respondent's application for 212(c) relief. Finally, the DHS contends that the Immigration Judge erred in failing to find that the respondent made a false claim to United States citizenship rendering him ineligible for a waiver under former section 212(c).

We concur in the DHS's contention that the Immigration Judge did not have jurisdiction to reopen the respondent's proceedings or to grant his application for a 212(c) waiver. This issue of jurisdiction to reopen is controlled by our holding in *Matter of G-N-C-*, 22 I&N Dec. 281 (BIA 1998), in which we held that the Board and the Immigration Judge have no jurisdiction to review challenges to an order of deportation which is reinstated under section 241(a)(5) of the Act.[1]  We

---

[1] If the Attorney General finds that an alien has reentered the United States illegally after having been removed of having departed voluntarily, under an order of removal, the prior order of removal
(continued...)

_

A38 014 144

found that the plain language of the statute and the regulation preclude a hearing by the Immigration Judge. *Matter of G-N-C-, supra*, at 287. Under Board precedent, therefore, the Immigration Judge erred in reopening the proceedings because she did not have jurisdiction to do so.

In this regard, we note that the Immigration Judge relied on the decision handed down by the United States Supreme Court in *U.S. v. Mendoza-Lopez*, 481 U.S. 828 (1987), in concluding that she had jurisdiction to reopen. The Immigration Judge reasoned that where there is a colorable claim of a due process violation in the proceeding underlying the original deportation order, reopening and vacation of the prior order is permitted. Further, the Immigration Judge found that the decision in *St. Cyr* rendered the respondent's underlying deportation order a violation of due process and, thus, his deportation unlawful. She then concluded that the respondent's subsequent re-entry into the United States could not have been illegal. We find the decision in *Mendoza-Lopez* distinguishable from the case at bar.

First, in *Mendoza-Lopez*, the Supreme Court found that an underlying deportation order is reviewable despite statutory prohibition against such action where an alien faces a *criminal* penalty for re-entry. *Id.* at 837; *see also U.S. v. Martinez-Vitela*, 193 F.3d 1047 99th Cir. 1999) (alien free to collaterally attack underlying deportation order where he appealed criminal conviction for re-entry). According to the decision by the Supreme Court in *Mendoza-Lopez*, it is when a determination made in an administrative proceeding, such as the issuance of an order of deportation, is to play a "critical role in the subsequent imposition of a *criminal sanction*" that there must be some "meaningful review of the administrative proceeding." *Id.* at 837-38 (internal citations omitted) (emphasis added). This is not the situation in this case wherein the respondent does not face any criminal sanctions in immigration court as a result of his re-entry after prior deportation. Second, we point out that the court in *Mendoza-Lopez* was not acting to vacate the underlying deportation order, as did the Immigration Judge in this case, but only deciding whether such deportation order could be used in obtaining a criminal conviction. As a result, we find that the Immigration Judge erred in concluding that the Supreme Court's decision in *Mendoza-Lopez* gave her jurisdiction to reopen the respondent's proceedings.

Moreover, we agree that the Immigration Judge lacked jurisdiction to consider the respondent's application for a waiver under former section 212(c) of the Act. According to section 241(a)(5) of the Act, an alien whose prior order of deportation has been reinstated is not eligible to apply for a waiver under former section 212(c) of the Act. *Compare Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003) (finding impermissible retroactive application of section 241(a)(5) of the Act to an alien who both illegally reentered the United States *and* filed an application for adjustment of status *prior to* April 1, 1997, the enactment date of the IIRIRA). In addition, the regulations recently enacted governing applications for relief under former section 212(c) explicitly prohibit aliens who have been

---

[1] (...continued)

is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after reentry.

3

A38 014 144

issued a final order of deportation and who subsequently reenter the United States illegally from applying for said relief. *See* 69 Fed. Reg. 57,834 (September 28, 2004) (to be codified at 8 C.F.R. pts. 1003, 1212, and 1240).[2]  *Cf. Leitao v. Reno*, 311 F.3d 453 (1st Cir. 2002) (remanding respondent's case for hearing on 212(c) application despite prior removal from United States *in the absence* of a finalized and adopted regulation that denies 212(c) relief to persons who have already been removed) (emphasis added).

Accordingly, the DHS's appeal will be sustained and the Immigration Judge's April 26, 2004, decision reopening the respondent's proceedings and granting his application for a waiver under former section 212(c) of the Act will be vacated.

ORDER: The DHS's appeal is sustained, and the Immigration Judge's April 26, 2004, decision reopening the respondent's proceedings and granting the application for a waiver under former section 212(c) of the Act is vacated.

_____
FOR THE BOARD

---

[2]  Because we find that the Immigration Judge lacked jurisdiction to reopen the respondent's proceedings and grant his application for 212(c) waiver, we find it unnecessary to address the DHS's remaining contentions on appeal.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
BOSTON, MASSACHUSETTS

Honorable Douglas P. Woodlock
U.S. District Judge
U.S. District Court, District of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

Randy Olen
Attorney-At-Law
55 Bradford Street, Suite 203
Providence, Rhode Island 02903

William Richards
Assistant Chief Counsel
Department of Homeland Security
Immigration and Customs Enforcement
JFK Federal Building, Room 425
15 New Sudbury Street
Boston, Massachusetts 02203

DATE: April 26, 2004
FILE: A38-014-144 and
U.S. District Court, District of Massachusetts
Criminal No. 02-10218DPW

In the Matter of: Perez, Juan Raymond

Attached is a copy of the written decision of the Immigration Judge. This decision is final unless an appeal is taken to the Board of Immigration Appeals. The enclosed copies of Form EOIR 26, Notice of Appeal, and Form EOIR 27, Notice of Entry as Attorney or Representative, properly executed, must be filed with the Board of Immigration Appeals on or before May 26, 2004. The appeal must be accompanied by proof of paid fee ($100.00).

All papers filed with the Court shall be accompanied by proof of service upon opposing counsel.

Sincerely,

Immigration Court Clerk

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

File:    A38 014 144

In the Matter of                              )
                                              )
Juan Raymond PEREZ,                           )        IN DEPORTATION
a.k.a., Jorge R. Marrero                      )        PROCEEDINGS
                                              )
Respondent                                    )
                                              )

CHARGE:          Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("the
                 Act") [8 U.S.C. § 1251(a)(2)(A)(iii)] – Convicted of an Aggravated
                 Felony, viz., drug trafficking pursuant to section 101(a)(43)(B)

                 Section 241(a)(2)(B)(i) of the Act [8 U.S.C. § 1251(a)(2)(B)(i)] –
                 Convicted of a Controlled Substance Violation

                 Section 241(a)(1)(B) of the Act [8 U.S.C. § 1251(a)(1)(B)] – Entered the
                 United States without Inspection

APPLICATIONS:    Reconsideration of Waiver of Inadmissibility under § 212(c) of the Act, at
                 the Directive of the United States District Court for the District of
                 Massachusetts

                 Reconsideration of Waiver of Inadmissibility under § 212(c) of the Act
                 after Motion to Reopen was granted

                 Termination of Proceedings

ON BEHALF OF RESPONDENT:                      ON BEHALF OF SERVICE:
Randy Olen, Esq.                              Assistant District Counsel
55 Bradford Street – Suite 203                Trial Attorney Unit–INS
Providence, Rhode Island 02903                JFK Federal Building, Room 425
                                              Boston, Massachusetts 02203

# DECISION OF THE IMMIGRATION JUDGE

## I    CASE HISTORY

On May 29, 1996, the Immigration and Naturalization Service ("INS" or "the Service")[1] personally served the respondent with an Order to Show Cause ("OSC"). The OSC alleges that the respondent is a native and citizen of the Dominican Republic who entered the United States ("U.S.") at or near San Juan, Puerto Rico on or about September 12, 1983 as an immigrant. It alleges that the respondent was convicted on March 29, 1996 in the Suffolk Superior Court in Boston, Massachusetts for the offense of unlawful possession of Class A substance with intent to distribute in violation of Chapter 94C of the Massachusetts General Laws. As a result it charges him with deportability pursuant to sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Act.

In written pleadings, dated November 16, 1996, the respondent admitted factual allegations #1-5 contained in the OSC. Further, he denied deportability as charged in the OSC, declined to designate a country for deportation purposes, and requested the following forms of relief from deportation: (1) suspension of deportation and (2) waiver of grounds of inadmissibility pursuant to section 212(c) of the Act. On December 9, 1996, the respondent filed Form EOIR-40 "Application for Suspension of Deportation" and provided additional supporting documents. On December 10, 1996, the Court ordered the respondent deported to the Dominican Republic pursuant to sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Act. In addition, the Court pretermitted the respondent's application for suspension of deportation because he had not been present in the U.S. for a continuous period of not fewer than ten years immediately following the offense date of March 29, 1996 for his criminal conviction and because he had been convicted of an aggravated felony. Lastly, the Court pretermitted the respondent's application for section 212(c) waiver under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") because he had been convicted of an aggravated felony. The respondent through his attorney reserved appeal. No appeal was taken.

On January 22, 1998 the respondent was deported to the Dominican Republic. See Reopened Group Exhibit 17 at "Warrant of Removal/Deportation." The respondent re-entered the U.S. See Reopened Group Exhibits 13, 14. The respondent was encountered by the DHS/ICE at the Dorchester, Massachusetts District Court where he faced motor vehicle charges under the name of Jorge Marrero, with date of birth, October 20, 1971, and place of birth, Puerto Rico. Id. The DHS/ICE arrested the respondent on May 29, 2002. Id. Upon comparing his fingerprints, the DHS/ICE determined the respondent had been deported previously. See Reopened Group Exhibit 17. The Government then issued a "Notice of Intent/Decision to Reinstate Prior Order," on May 29, 2002, and did reinstate the prior order on May 30, 2002. See Reopened Group Exhibit 16.

---

[1] As of March 1, 2003, the Service has ceased to exist. Its functions, however, have been transferred to the Department of Homeland Security ("DHS"). Within that Department is the Bureau of Immigration and Customs Enforcement ("ICE").

The United States District Court for the District of Massachusetts ("District Court") issued a memorandum and order dated January 22, 2003. First, it indicated that the respondent had moved to dismiss the criminal case that charged him with illegal reentry into the U.S. in violation of 8 U.S.C. §1326 after he was ordered deported. Second, it averred that the respondent claimed that his underlying deportation was improperly ordered because he was deprived of effective assistance of counsel. The respondent's former legal counsel allegedly failed to file a timely appeal from the Court's denial of the section 212(c) waiver. Third, the District Court indicated that the respondent's deportation may have been "based on an error of law ultimately clarified by the Supreme Court's later decision in INS v. St. Cyr, 533 U.S. 289 (2001)." As a result, while the District Court declined to dismiss the respondent's criminal case it gave the respondent the opportunity to move for immediate reconsideration of his original section 212(c) denial.

On March 20, 2003, the respondent, through his attorney, filed a motion to reopen removal proceedings. First, the respondent claims that at his December 12, 1996 deportation hearing, he was not permitted to apply for a section 212(c) waiver based on the decision in Matter of Soriano I and II, 21 I&N Dec. 516 (BIA 1996). Rather than file a timely notice of appeal of this decision, the respondent's former counsel filed a motion to the Board of Immigration Appeals ("BIA") which requested that the thirty day period in which to notice the appeal be extended.[2] That motion was denied as untimely and no appeal was ever taken to the BIA. Second, the respondent contends that although he was deported to the Dominican Republic on January 22, 1998, the Court should reopen his case, sua sponte, and allow him to apply for section 212(c) waiver. See 8 C.F.R. §3.23(b)(1). He alleges that his case is governed by the U.S. Supreme Court's holding in St. Cyr because he tendered his guilty plea prior to the enactment of AEDPA. Subsequently, on April 3, 2003, the Court granted the respondent's motion to reopen proceedings. Further, the Court indicated in its ruling that the Government had not filed a response within the time period allowed and thus, the respondent's motion was deemed unopposed.

The Government on August 14, 2003 filed a motion with the Court requesting that the Court vacate its ruling reopening the respondent's deportation proceedings because the "Warrant of Removal/Deportation" entered against the respondent on or about December 2, 1997 and executed on January 22, 1998 had been re-instated pursuant to 8 C.F.R. §241.8(a) when he illegally re-entered the U.S. It maintains that the December 2, 1997 "Warrant of Removal/Deportation" was based on the Court's December 10, 1996 deportation order which became final on January 9, 1997, the date the appeal was due, because it was never appealed. Further, the Government alleges that because the "Warrant of Removal/Deportation" had been re-instated on June 5, 2002, the Court pursuant to 8 C.F.R. §241.8(a), lacks jurisdiction to hear the respondent's case. Next, the Government avers that the Court also has no jurisdiction to rule

---

[2] The Court accepts the respondent's counsel's representation as an officer of the Court, as to this procedural history. In addition, the Government's statement in its motion states: "[t]he December 2, 1997 Warrant of Removal/Deportation was based on the IJ [Immigration Judge's] order of December 10, 1996, which was never appealed and thus, became final on January 9, 1997." See Reopened Group Exhibit 6.

3

on the respondent's motion to reopen because section 241(a)(5) of the Act bars reopening the deportation proceedings when an alien illegally re-enters the U.S. after being ordered deported under an order of deportation. In this case, the respondent's prior order was re-instated on June 5, 2002. Lastly, the Government also declares that the respondent improperly filed his motion to reopen because he filed the motion subsequent to his departure from the U.S.[3] See 8 C.F.R. §3.23(b)(1).

On September 15, 2003, the respondent filed a response opposing the Government's motion to vacate reopening. The respondent contends that because his order of deportation was "based on an error of law," as indicated in the District Court's memorandum and order and because his prior deportation was unlawful, his subsequent re-entry is not illegal. Consequently, the regulations that the Government cites are inapplicable to the respondent's situation; the motion to vacate reopening his case should be denied; and, his section 212(c) waiver application should be adjudicated. In support of his position, the respondent cites U.S. v. Mendoza-Lopez, 481 U.S. 828 (1987) and Leitao v. Ashcroft, 311 F.3d 453 (1st Cir. 2002). Attached to the respondent's motion are various supporting documents for his 212(c) application: (1) "Application for Advanced Permission to Return to Unrelinquished Domicile" (Form I-191); (2) affidavits of support; and (3) copies of various certificates for religious studies and educational achievement while imprisoned.

On that same date, September 15, 2003, the Government, via Form I-261 "Additional Charges of Inadmissibility/Deportability," lodged against the respondent an additional charge pursuant to section 241(a)(1)(B) of the Act for having entered the U.S. without inspection because he entered at an unknown date of entry and at an unknown place on or after January 22, 1998. See Reopened Group Exhibit 10.

## II    STANDARDS OF LAW

### A. 212(c) Waivers of Inadmissibility

Although the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009-546 (Sept. 30, 1996) ("IIRIRA"), which came into effect on April 1, 1997, repealed §212(c) of the Act, waivers under § 212(c) of the Act nevertheless remain available to a limited group of respondents. The U.S. Supreme Court, in INS v. St. Cyr, 121 S. Ct. 2271, 2293 (2001), held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were

---

[3] Because the Court rescinded the deportation order in light of the U.S. Supreme Court's holding in St. Cyr the Service's arguments are unavailing. Consequently, the respondent's re-entry on or after January 22, 1998 was not illegal; he is not barred from filing a motion to reopen; and the Court has jurisdiction to reopen the respondent's deportation proceeding. See U.S. v. Mendoza-Lopez, 481 U.S. 828, 840 (1987) (affirming dismissal of the criminal charge under 8 U.S.C. §1326 of unlawful re-entry after deportation where a collateral attack on the validity of the underlying deportation order was achieved); see also Leitao v. Ashcroft, 311 F.3d 453, 456 (1st Cir. 2002) (holding that the re-admission bar of a deported alien "is a legally cognizable collateral consequence that preserves a live controversy" even after the alien was ordered deported and allowing the alien permission to seek section 212(c) relief).

4

obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." Courts have generally held that § 212(c) relief is only available where aliens pled guilty or nolo contendere to the offense, thereby abandoning their rights and admitting guilt in reliance on the availability of § 212(c) relief. See id.; see also Dias v. INS, 311 F.3d 456, 458 (1st Cir. 2002) and Rankine v. Reno, Nos. 01-2135, 01-2483, 00-2631, 2003 WL 179792, at *7 (2nd Cir. 2003) (in which cases the First and Second Circuits held that § 212(c) relief is unavailable to aliens who went to trial, as opposed to entering pleas, before § 212(c) relief was repealed).

Under section 212(c) of the Act, an alien returning from a temporary trip abroad may be admitted in the discretion of the Attorney General, as long as: (i) he or she has been lawfully admitted for permanent residence and is continuing in that status; and (ii) he or she is returning to a lawful unrelinquished U.S. domicile of seven consecutive years. This waiver of inadmissibility has been applied to respondents in deportation proceedings as well. See Francis v. INS, 532 F.2d 268 (2nd Cir. 1976). Further, the basis of the waiver in deportation proceedings must have a comparable ground for a waiver in exclusion proceedings. See Matter of Hernandez-Casillas, 20 I&N Dec. 262 (BIA 1990). Moreover, before granting such a waiver, a court must look to discretionary factors which might include: (1) family ties; (2) duration of residence in the United States; (3) extreme hardship to the alien and his or her family; (4) service in the U.S. armed forces or in the community; and (5) any criminal activity or other activity showing bad character. See, e.g., Matter of Edwards, 20 I&N Dec. 191 (BIA 1990); see also Matter of Marin, 16 I&N Dec. 581 (BIA 1978). In addition, a heightened showing of unusual or outstanding equities is required when an alien is convicted of a serious drug offense, such as one that relates to the trafficking or the sale of drugs. See Matter of Coelho, 20 I&N Dec. 464, 467-68 (BIA 1992); Matter of Roberts, 20 I&N Dec. 294, 299 (BIA 1991); Matter of Edwards, 20 I&N Dec. 191, 195-96 (BIA 1990); Matter of Buscemi, 19 I&N Dec. 628, 633-34 (BIA 1988). The need to show unusual or outstanding equities is not triggered solely by convictions for serious crimes involving controlled substances, rather the Court has to examine the gravity of the offense. Matter of Edwards, 20 I&N Dec. at 195. Demonstrating unusual or outstanding equities will not result in an automatic grant of section 212(c) relief; "rather, absent such equities, relief will not be granted in the exercise of discretion." Id. at 196.

Finally, an alien is ineligible for § 212(c) relief if he or she entered into a plea agreement: (1) on or after April 1, 1997 (IIRIRA); (2) on or after April 24, 1996 to March 31, 1997, if the alien has been convicted of an aggravated felony or two crimes involving moral turpitude ("CIMTs") [Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (enacted Apr. 24, 1996) (AEDPA)]; or (3) on or after November 29, 1990, if the alien has been convicted of one or more aggravated felonies and has served a term of imprisonment of at least five years for such felony or felonies (Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978).

B. Aggravated Felony

Aggravated felony under section 101(a)(43)(B) of the Act means "illicit trafficking in a

5

controlled substance (as defined in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)."

### C. Controlled Substance

After admission into the U.S., any alien convicted of a controlled substance violation is removable. See INA §241(a)(2)(B)(i).

### D. Entry without Inspection

Any alien who entered the U.S. without inspection is deportable. See INA §241(a)(1)(B).

## III    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The issue before the Court is whether the respondent is eligible for a section 212(c) waiver. The Court finds that he is prima facie eligible and that he does merit relief under section 212(c), and, accordingly, will grant the respondent's request for discretionary waiver of deportation.

The respondent was initially charged in 1996 with deportation under sections 241(a)(2)(A)(iii) and 241(a)(2)(B)(i) of the Act for his conviction of possession of a Class A substance with intent to distribute. These two charges were sustained originally and are re-sustained in reopened proceedings by evidence that is clear, convincing, and unequivocal. Subsequently, the Government charged the respondent in 2003 under section 241(a)(1)(B) of the Act for illegal re-entry into the U.S. The grant of relief under section 212(c) is discretionary because section 212(c) allows for waiver of inadmissibility at "the discretion of the Attorney General." Discretion is exercised by "balanc[ing] the adverse factors evidencing an alien's undesirability as a permanent resident with the social and human considerations presented in his behalf." See Matter of Marin, 16 I&B Dec. 581 (BIA 1978). Further, because of his conviction for drug trafficking, the respondent has the additional burden of demonstrating unusual or outstanding equities.

### A. Eligibility under section 212(c) of the Act

In order to be eligible for relief under section 212(c) of the Act the respondent must meet 4 requirements.[4] First, the respondent has been a lawful permanent resident ("LPR") since September 12, 1983. Second, the respondent also has over seven years of unrelinquished domicile in the U.S. He arrived in the U.S. with his family when he was approximately 9 years

---

[4] In order to be eligible for relief under INA § 212(c), the immigrant must establish that: (1) he is a lawful permanent resident; (2) he has maintained an unrelinquished domicile of at least seven consecutive years; (3) the basis for the waiver in deportation must be based on a comparable ground in exclusion; and (4) he warrants a favorable exercise of discretion. See INA § 212(c).

old in 1983. The respondent meets the first two requirements under section 212(c).

Third, the respondent meets the third requirement under section 212(c): the basis for the waiver in deportation must be based on a comparable ground in exclusion. See Matter of Hernandez-Casillas, 20 I&N Dec. 262 (BIA 1990). The respondent is charged with three grounds of deportability: aggravated felony (drug trafficking), controlled substance violation, and entry without inspection. The first two deportability charges readily meet the third requirement for section 212(c) relief. The charge of deportability for a controlled substance violation has a comparable ground for a waiver in exclusion. See INA §212(c)(1)(A)(i)(II). In regard to the charge of deportability for an aggravated felony conviction, the BIA held in Matter of Montenegro, 20 I&N DEC 602 (BIA 1992), that section 212(c) waiver is not unavailable to an alien who is convicted of an aggravated felony simply "because there is no ground of exclusion which recites the words, 'convicted of an aggravated felony,' as in section 241(a)(4)(B) of the Act."

The respondent's last charge of deportability is entry without inspection. The respondent denies allegation number 6 and the charge of deportability in the Form I-261. See Reopened Group Exhibit 10. The respondent physically "entered without inspection" in that when he returned to the U.S. he did not make himself known to the legacy agency, INS, now known as ICE, and was not inspected at that time. See Reopened Group Exhibit 14. Assuming arguendo, that this ground of deportability is sustainable, although this ground of deportation has no comparable ground of excludability, the Court will not find the respondent ineligible for section 212(c) relief.

Because the First Circuit has not addressed this matter as of the date of this decision, the Court will adopt the Second Circuit's reasoning in Bedoya-Valencia v. INS, 6 F.3d 891, 897 (2nd Cir. 1993): entry without inspection as a ground of deportation cannot have an analogous ground of excludability because at the time the violation occurs the alien is already inside the U.S. See also Leal-Rodriguez v. INS, 990 F.2d 939, 949 (7th Cir. 1993). The respondent in Bedoya-Valencia, 6 F.3d at 893, who was convicted of a narcotics offense, was placed in deportation proceedings, but while his proceedings were pending he departed the U.S. and, subsequently, illegally re-entered the U.S. approximately two years later. The Government charged him additionally with entry without inspection and the respondent applied for section 212(c) waiver. Id. The Second Circuit opined that when the U.S. Congress wrote section 212(c) waiver it only intended to consider exclusion grounds and not the charge of entry without inspection because that deportable offense can only occur the moment an alien is located inside the U.S. Id. at 897. But its omission from the grounds of exclusion does not preclude an alien charged with entry without inspection from requesting section 212(c) relief because "[b]y logical necessity, [entry without inspection] can have no counterpart ground of exclusion." Id. at 898. Thus, the Second Circuit in Bedoya-Valencia, did not preclude an alien from applying for section 212(c) relief even though the ground for deportation, entry without inspection, was not analogous to a ground of excludability.

Both Campos v. INS, 961 F.2d 309 (1st Cir. 1992), and In re Esposito, 21 I&N Dec. 1

(BIA 1995), are distinguishable from the present case. The alien in Campos, 961 F.2d at 312, was charged with deportation based on his conviction for possession of a firearm without a license. The alien in Esposito, 21 I&N Dec. at 2, was charged with deportation based on his conviction for possession of a sawed-off shotgun. In both Campos, 961 F.2d at 317; and In re Esposito, 21 I&N Dec. at 10, the First Circuit and the BIA, respectively, held that section 212(c) could not waive the charge of deportability regarding a firearms conviction, because there was no comparable ground of excludability, and as such, the aliens were deemed ineligible for relief under section 212(c). The BIA explained in Esposito that a firearms violation could have been included as one of the grounds for exclusion, but that the U.S. Congress chose not to do so. Id. Accordingly, the BIA noted that Bedoya-Valencia was not controlling because "firearms violations logically could form the basis of an exclusion ground." Id. at 11. The First Circuit applied similar reasoning in Campos, 961 F.3d at 314, by noting that the U.S. Congress had not changed the scope of section 212(c) relief to encompass the deportable offense of a possession of a firearm. If the U.S. Congress had intended to include a firearms violation as a ground of exclusion it would have done so. Id. In sum, because it is clear that entry without inspection can occur only after an alien enters the U.S. as a ground of deportability/removability and not as a ground of excludability, the Court finds Bedoya-Valencia controlling in the present case. As such, the respondent meets the third requirement.

The Court finds, however, that the charge of entry without inspection is not sustained. See U.S. v. Mendoza-Lopez, supra; see also footnote 3, supra.

The Court reopened these proceedings and rescinded its original findings and decision. Those findings and decision are void ab initio. Just as an applicant in exclusion proceedings, who is physically present in the U.S., has not made an "entry" and whose application for admission is considered "continuous," the legal fiction, in its obverse, obtains. Although the respondent was physically deported, it was upon an error of law, since clarified by the U.S. Supreme Court in INS v. St. Cyr, supra. For the purpose of considering the respondent's 212(c) application, the respondent is restored to his position as of the date of the prior decision in this case deporting him, viz, December 10, 1996. The respondent is considered never to have departed the U.S. since that date. See also Leitao v. Ashcroft, supra. The respondent, therefore, is eligible for a waiver pursuant to section 212(c) of the Act.

## B. Claim under Section 212(c) of the Act

Because the respondent has demonstrated statutory eligibility for 212(c) relief, the sole remaining issue is whether he warrants this relief as a matter of discretion. There is no "inflexible standard for determining who should be granted discretionary relief." Id. Rather, each case must be judged on its own merits. Matter of L-, 3 I&N Dec. 767, 770 (BIA, A.G. 1949).

The respondent became a LPR in 1983 and has lived in the U.S since he was approximately 9 years old. The respondent has grown up in the U.S. for most of his life and all of his family, but for one aunt on his mother's side, is living permanently in the U.S. He has

8

four U.S. citizen children: three boys and one girl. The respondent has been in a serious relationship with the mother of his daughter during the last four years. He has a long consistent employment history: clerk, driver, and as an employee in his father's tire business. His father wants him to inherit the family's tire business and the respondent was in the process of learning how to operate the business prior to his detention according to the various affidavits of support provided to the Court. The mothers of two of his children explained the hardship his children would endure without his support and presence. Favorable factors, however, must be balanced against the adverse factors. Further, because the respondent has a drug trafficking conviction, he must show that he has unusual and outstanding equities. See Matter of Buscemi, supra. Possession of a Class A substance with intent to distribute in 1996 is not the respondent's only conviction. He was also convicted for the following offenses: armed robbery in 1991, breaking and entering in 1992, possession of a Class B controlled substance in 1994, and assault and battery in 1994. He also has had two civil restraining orders issued against him in 1994. The respondent also has claimed, using the alias of Jorge Marrero, to be a U.S. citizen on two separate occasions. But see, Section IV, infra. Although these offenses seem to evidence continuous criminal misconduct, the respondent has demonstrated rehabilitation. While incarcerated he has completed various religious study courses and received a certificate for successful completion of a "Desktop Publishing" course. His father explained in Court he believes that the reason behind his son's criminal behavior was the death of his mother in 1990. During the past seven years the respondent has avoided any further criminal convictions. The Court finds that the respondent's equities in this matter, including the length of his lawful permanent residence and that it began when he was a child of tender years, his four U.S. citizen children, his U.S. citizen wife, and his other family members in the aggregate constitute unusual and outstanding equities which counterbalance the negative factors in this case. Accordingly, regardless of his numerous convictions, the Court, in the exercise of discretion, finds that the respondent warrants relief under section 212(c) of the Act.

## IV   FALSE CLAIM TO U.S. CITIZENSHIP

The facts are incontrovertible that the respondent claimed to be a U.S. citizen after he physically returned to the U.S. He assumed the identity of Jorge R. Marrero with place of birth in Puerto Rico. The respondent, using this alias, made claim to U.S. citizenship on two separate occasions. First, when he filled out an "Employment Eligibility Verification" form in 2000 and second, when he applied for a Massachusetts driver's license in 1998, he indicated in the "Voter Registration" section that he was "already registered" even though the document clearly stated that "to register to vote in Massachusetts you must be: - a U.S. citizen . . . ." The respondent used this identity for a number of years to obtain a driver's license, to work, when arrested, and even to marry and acknowledge a child. See Reopened Group Exhibits 17, 23, 32, 34, 36, 42.

The respondent claims he was desperate and claimed to be a U.S. citizen because he had to work for his and his children's very survival. In the order of false claims, the respondent might have chosen a lesser claim to obtain work, viz., the identity of an alien lawfully admitted for permanent residence or an alien with work authorization only. The Court takes into account, however, the fear the respondent had as an "alien," either his own identity or an assumed identity

9

of an "alien," albeit lawful permanent resident or with work authorization. The respondent sought to establish a secure, i.e., non-deportable U.S. citizen, assumed identity. The Court acknowledges that the respondent felt coerced, although not coerced, actually, to claim that he was a U.S. citizen. The unlawful deportation order left him without any immigration status in the U.S. and he was unable to make a living to provide for his children and himself, otherwise.

This Court has found that the respondent's deportation was based on an error of law, not clarified by the U.S. Supreme Court until almost five years after the respondent was ordered deported. The period of time from the date of this Court's prior decision to the present is held, essentially, in abeyance. For the purpose of 212(c) relief, the respondent is entitled to the legal fiction that he never left the U.S. and is restored to his position as a lawful permanent resident as of the date of the decision ordering him deported. See Conclusion of Section III, A, supra. Thus restored, the respondent would have had the right to work in the U.S. as one of the privileges of being a lawful permanent resident. He would not have had to assume a different identity in order to work and support himself. Because the respondent was denied that right, wrongfully, and the order of deportation was void ab initio, the Court finds, by extension, that the respondent's false claim to U.S. citizenship, during this period of abeyance, is rendered nugatory.

The Court finds, therefore, the respondent has not made a false claim to U.S. citizenship.[5]

In the alternative, the respondent's ground of inadmissibility under section 212(a)(6)(C)(i) of the Act, misrepresentation, i.e., his false claim to U.S. citizenship to procure a benefit provided under the Act, is deemed included in his application for section 212(c) waiver and is waived.[6]

---

[5] The Government referred to the charge of "False Claim to U.S. citizenship" numerous times throughout the hearing and that there was no waiver available for that ground. It proceeded as though this ground were alleged. The Government in its Form I-261, Additional Charges of Deportation, has not alleged such a ground.

IIRIRA § 344(a) added § 212(a)(6)(C)(ii) to the Act: "Falsely Claiming Citizenship . . . [a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this Act (included section 274A) or any other Federal or State law is excludable." The provision applies to representations made on or after the enactment (September 30, 1996) only.

IIRIRA added § 237(a)(3)(D) to the Act: "Falsely claiming citizenship . . . [a]ny alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under this Act (including section 274A) or any Federal or State law is deportable."

The respondent made representations regarding U.S. citizenship after the enactment of IIRIRA, viz., on November 6, 1998 and December 11, 2000. See Reopened Exhibit 34, 42. The respondent, however, is in deportation proceedings and cannot be charged under the IIRIRA provisions in these proceedings.

[6] Certain provisions in the Act prior to IIRIRA (and removal proceedings) can apply to or encompass false claim to U.S. citizenship:

Ground of deportability, section 241(a) of the Act, states: "(1) Excludable At Time Of Entry Or Of Adjustment Of Status Or Violates Status – (A) Excludable

Aliens – Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens excludable by the law existing at such time is deportable."

In conjunction with –

Ground of inadmissibility, section 212(a)(6)(C)(i) of the Act, states "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under the Act is excludable."

(The charge of deportation would read: § 241(a)(1)(A), viz., § 216(a)(6)(C)(i).)

Ground of deportability, section 241(a)(3)(C) of the Act, states "[a]ny alien who is the subject of a final order for violation of section 274C is deportable."

The respondent is not the subject of a final order for violation of section 274C of the Act and, therefore, not deportable under section 241(a)(3)(C).

There is a specific waiver for misrepresentation under section 212(i) of the Act. The respondent has the qualifying relatives to apply for a waiver under this section. He would have a visa immediately available to him if he were the beneficiary of an approved "Petition for Alien Relative" (Form I-130) filed by his U.S. citizen wife. See Matter of Gabryelsky, 20 I&N Dec. 750 (BIA 1993); Matter of Rainford, 20 I&N Dec. 598 (BIA 1992). The respondent, however, has not applied for this form of relief [212(i) waiver in conjunction with adjustment of status in addition to the 212(c) waiver]. The respondent has made a prima facie showing that he is the spouse and parent of U.S. citizens and that he is the son of immigrants lawfully admitted for permanent residence.

Additionally, a section 212(c) waiver may be used to waive a misrepresentation ground of inadmissibility under section 212(c)(6)(C)(i). The language of the statute indicates it is a blanket waiver: "[LPRs] . . . may be admitted . . . without regard to the provisions of subsection (a) (other than paragraphs (3) [security related grounds] or (9)(C) [International Child Abduction])." INA § 212(c) of the Act. One need not be charged in an Order to Show Cause with a ground of deportation or inadmissibility, specifically, in order to waive such ground if it exists. In deportation proceedings, an application for a waiver of 212(c) is continuous and governed by the law at the time of commencement of proceedings. INS v. St. Cyr, 533 U.S. 289 (2001), does not apply to this ground of inadmissibility. The respondent may have the 212(c) waiver apply to this ground of inadmissibility without regard to the date of his misrepresentations; the ground is not controlled by AEDPA.

Once waived, either under 212(i) or 212(c), the respondent's false claim to U.S. citizenship to procure a benefit under the Act would not form the basis of a ground of removability if the respondent were subsequently placed in removal proceedings. Cf., Matter of Balderas, 20 I&N Dec. 389 (BIA 1991); Matter of Gordon, 20 I&N Dec. 52 (BIA 1989); Matter of Mascorro-Perales, 12 I&N Dec. 228 (BIA 1967); Matter of G-A-, 7 I&N Dec. 274 (BIA 1956).

11

V    ORDERS

Based on the foregoing, the following order shall enter:

IT IS HEREBY ORDERED that the respondent's application for a waiver under § 212(c) of the Act be, and the same is hereby GRANTED.

IT IS HEREBY FURTHER ORDERED that these proceedings be, and the same are hereby TERMINATED.

26 April 2004
_____
Date

_Patricia Sheppard_
PATRICIA M.B. SHEPPARD
United States Immigration Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | 02-10218-DPW |
| v. | ) | |
| | ) | |
| JUAN RAYMOND PEREZ | ) | |

### MEMORANDUM AND ORDER
January 22, 2003

The defendant has moved to dismiss this criminal case charging him as an alien with illegal reentry of this country, in violation of 8 U.S.C. § 1326, after being deported. He claims the underlying deportation was improper because he was deprived of effective assistance by his immigration counsel who failed competently to pursue his application for waiver of deportability under former § 212(c) of the Immigration and Nationality Act.

It appears on this record that the defendant's immigration counsel failed in a timely fashion to file an appeal from an immigration Judge's denial of the defendant's § 212(c) waiver of deportability application. That denial appears to have been based on an error of law ultimately clarified by the Supreme Court's later decision in INS v. St. Cyr, 533 U.S. 289 (2001). As a consequence, defendant's underlying deportation may have been improperly implemented.





Although I find the defendant was prevented from pursuing a meritorious direct immigration appeal by the lack of effective assistance from his immigration counsel, I, nevertheless, decline to dismiss the instant criminal case. I will, however, afford the defendant the opportunity to move for immediate reconsideration in the Immigration Court of the earlier denial of the § 212(c) waiver application.

The parties shall submit a Status Report regarding renewed § 212(c) proceedings on or before February 21, 2003. Pending determination of defendant's renewed § 212(c) application, he shall remain in the custody of the Attorney General under the detention order from this court in connection with this criminal case. The time necessary for the resolution of the renewed Immigration proceedings shall be considered excludable in the interests of justice under the Speedy Trial Act.

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

2

≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Juan Raymond PEREZ*

### DEFENDANTS
*Alberto Gonzales; et als*

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
*Randy Olen 55 Bradford St. # 203
Providence RI 02903 (401) 274-1400*

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*28 USC § 2241*

Brief description of cause: *Review of final order of deportation*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE *Woodlock*

DOCKET NUMBER *02-10218-DPW*

DATE *5/2/05*

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) *Perez v Gonzales*

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

     III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

     IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

*USA v Juan Raymond Perez, CR No. 02-10218-DPW*

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                        YES        NO

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

                                                        YES        NO

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                        YES        NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                        YES        NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                        YES        NO

   A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

       EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

   B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
       GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

       EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME *Randy Olen*
ADDRESS *55 Bradford St #203  Providence RI 02903*
TELEPHONE NO. *(401) 274-1400*

(Cover sheet local.wpd - 11/27/00)